RICHARD T. BOWLES (#046234)
BOWLES & VERNA LLP
2121 N. California Boulevard, Suite 875
Walnut Creek, California 94596
Telephone: (925) 935-3300
Facsimile: (925) 935-0371
Email: rbowles@bowlesverna.com

*Attorneys for Defendant*
ARDEN ACRES MODULAR HOME PARK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

SACRAMENTO HOMELESS UNION, et al.

Plaintiffs,

v.

CITY OF SACRAMENTO, et al.

Defendants.

Case No. 2:26-CV-02473-TLN-AC

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT ARDEN ACRES MODULAR HOME PARK'S MOTION TO DISMISS CERTAIN CLAIMS PURSUANT TO FED. R. CIV. P. 12(b)(6)**

Date: TBA
Time: 2:00 p.m.
Courtroom: 2
Judge: Hon. Troy L. Nunley

# TABLE OF CONTENTS


I. INTRODUCTION ..... 6

II. LEGAL ARGUMENT ..... 7

A. Legal Standard for Motion to Dismiss ..... 7

B. Plaintiffs Fail to Plausibly Allege That Arden Acres Acted Under Color of State Law ..... 8

1. Arden's Participation in the City's Shelter Program Does Not Satisfy the Public-Function Test. ..... 8

2. Plaintiffs Do Not Plausibly Allege Joint Action or a Sufficiently Close Nexus Between the City and Arden's Challenged Conduct. ..... 9

3. Plaintiffs Do Not Plausibly Allege Governmental Compulsion or Coercion. ..... 10

C. Even Assuming State Action, Plaintiffs' Constitutional Claims Independently Fail ..... 11

1. Plaintiffs Fail to State a Fifth Amendment Takings Claim Against Arden Acres ..... 11

2. Plaintiffs Fail to State a Fourteenth Amendment Procedural Due Process Claim Against Arden ..... 11

3. Plaintiffs Fail to State a State-Created Danger Claim Against Arden ..... 13

D. Plaintiffs Fail to State a Title III ADA Claim Against Arden Acres ..... 14

E. Plaintiffs Fail to State a Claim Against Arden Under Violence Against Women Act ("VAWA") ..... 14

F. Plaintiffs Fail to State the Following State-Law Claims Against Arden ..... 15

1. Plaintiffs Fail to State a FEHA Housing-Discrimination Claim Against Arden ..... 15

2. Plaintiffs Fail to State a Claim Against Arden for Breach of the Implied Warranty of Habitability ..... 16

3. Plaintiffs Fail to State a Claim Under Article I, Section 1 of the California Constitution ..... 16

4. Plaintiffs Fail to State a Procedural Due Process Claim Under Article I, Section 7 of the California Constitution ..... 17

5. Plaintiffs Fail to State the Sixteenth Cause of Action Against Arden ..... 17

a. Plaintiffs Fail to State a Breach-of-Contract Claim as Third-Party Beneficiaries ..... 17

b. Plaintiffs Fail to State a Claim for Promissory Estoppel ..... 18

c. Plaintiffs Fail to Plead Fraud with Particularity ..... 18

III. CONCLUSION ..... 18

# TABLE OF AUTHORITIES

## Cases

*Auburn Woods I Homeowners Ass'n v. Fair Employment & Housing Comm'n*, 121 Cal. App. 4th 1578 (2004) ........ 15

*Clausing v. San Francisco Unified Sch. Dist.*, 221 Cal. App. 3d 1224 n.6 (1990) ........ 17

*Engalla v. Permanente Medical Group, Inc.*, 15 Cal. 4th 951 (1997) ........ 19

*Goonewardene v. ADP, LLC*, 6 Cal. 5th 817 (2019) ........ 17, 18

*Green v. Superior Court*, 10 Cal. 3d 616 (1974) ........ 16

*Katzberg v. Regents of University of California*, 29 Cal. 4th 300 (2002) ........ 17

*Kirtley v. Rainey*, 326 F.3d 1088 (9th Cir. 2003) ........ 8

*Orcilla v. Big Sur, Inc.*, 244 Cal. App. 4th 982 (2016) ........ 18

*Peviani v. Arbors at California Oaks Property Owner, LLC*, 62 Cal. App. 5th 874 (2021) ........ 16

*Tenzer v. Superscope, Inc.*, 39 Cal. 3d 18 (1985) ........ 19

## Federal Cases

*Ariz. ex rel. Goddard v. Harkins Amusement Enters., Inc.*, 603 F.3d 666, 670 (9th Cir. 2010) ........ 14

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ........ 7

*Barnett v. Centoni*, 31 F.3d 813, 816–17 (9th Cir. 1994) ........ 13

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ........ 7

*Blanco v. County of Kings*, 142 F. Supp. 3d 986, 1001 (E.D. Cal. 2015) ........ 17

*Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982) ........ 10

*Brunette v. Humane Soc'y of Ventura Cnty.*, 294 F.3d 1205, 1211–13 (9th Cir. 2002) ........ 10

*Cobine v. City of Eureka*, 250 F. Supp. 3d 423, 432–33 (N.D. Cal. 2017) ........ 13

*Franklin v. Fox*, 312 F.3d 423, 445 (9th Cir. 2002) ........ 9

*Howerton v. Gabica*, 708 F.2d 380, 384–85 (9th Cir. 1983) ........ 9

*Hudson v. Palmer*, 468 U.S. 517, 533 (1984) ........ 12

//

*Indep. Hous. Servs. of S.F. v. Fillmore Ctr. Assocs.*, 840 F. Supp. 1328, 1344 (N.D. Cal. 1993) .......... 14

*Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) .......... 18

*Langer v. Kiser*, 57 F.4th 1085, 1093–94 (9th Cir. 2023) .......... 14

*Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 543 (2005) .......... 11

*McKenzie v. Poverello Ctr.*, Inc., No. CV 25-97-M-KLD, 2026 U.S. Dist. .......... 9

*Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993) .......... 12

*Rawson v. Recovery Innovations, Inc.*, 975 F.3d 742, 747 (9th Cir. 2020) .......... 8, 9, 10

*Rendell-Baker v. Kohn*, 457 U.S. 830, 840–42 (1982) .......... 8, 9

*Sanchez v. City of Fresno*, 914 F. Supp. 2d 1079, 1105–06 (E.D. Cal. 2012) .......... 11, 13

*Sinclair v. City of Seattle*, 61 F.4th 674, 680–82 (9th Cir. 2023) .......... 13

*Smith v. United Caring Servs.*, 2025 WL 1672866, at *2 (7th Cir. June 13, 2025) .......... 9

*Swarthout v. Cooke*, 562 U.S. 216, 222 (2011) .......... 12

*Taylor v. Yee*, 780 F.3d 928, 935 (9th Cir. 2015) .......... 7

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) .......... 19

*Zeyen v. Bonneville Joint Dist.No. 93*, 114 F.4th 1129, 1139 (9th Cir. 2024) .......... 11

**Statutes**

34 U.S.C. § 12491 .......... 14, 15

42 U.S.C. § 1983 .......... 7, 8

Cal. Civ. Code § 1710(4) .......... 19

Gov. Code § 12955.8 .......... 15

**Rules**

Federal Rule of Civil Procedure 8(a)(2) .......... 7

Federal Rule of Civil Procedure 9(b) .......... 18

Federal Rule of Civil Procedure 12(b)(6) .......... 7

///

///

**Constitutional Provisions**

Cal. Const. art. I, & 1 ........ 16, 17

Cal. Const. art. I, & 7 ........ 17

U.S. Const. amend. V........ 11

## I. INTRODUCTION

This action arises from the City of Sacramento's City Motel Shelter Program (formerly the Motel Voucher Program) and successor Emergency Shelter Voucher ("ESV") for Families program (collectively, the "Program"). Although Plaintiffs repeatedly group Arden Acres Modular Home Park ("Arden") together with participating motels as "Private Defendants," Arden is not a motel and did not occupy the same role in the Program. Arden is a mobile home park that made a limited number of its rental units available to the City pursuant to a contract. The Program itself was administered by Step Up on Second Street ("Step Up"), which provided case-management services to Program participants. The Complaint alleges that the City retained oversight and authority over Program rules, placements, and exclusions, while Step Up and the Motel Defendants allegedly participated in the administration of Program benefits and the creation, maintenance, communication, and enforcement of the "Do Not Rent" ("DNR") list. Compl. ¶¶ 40, 52, 64–65.

The allegations specific to Arden reflect a materially narrower role. Plaintiffs allege that Arden housed certain Program participants pursuant to a contract with the City and/or Step Up; that Arden management sought to remove certain residents after its contract with the City ended; that certain residents were served with three-day notices to pay rent or quit; and that Arden discarded Plaintiff Stotts's belongings after allegedly telling her she could temporarily leave them at the property. Compl. ¶¶ 26, 34, 55, 59–60. By contrast, the Complaint does not specifically allege that Arden selected participants for the Program, determined their eligibility for Program benefits, controlled their placement, administered the DNR list, or made the City's decision to terminate the Program.

Nevertheless, Plaintiffs repeatedly conflate these distinct roles by asserting generalized allegations against all "Private Defendants." They allege collectively that Arden, Step Up, and the Motel Defendants were willful participants in joint activity with the City, executed the City's decision to terminate the Program, participated in a coordinated vacate-and-lockout operation, administered the DNR list, and disposed of participants' property pursuant to City direction and funding. Compl. ¶ 63. Those collective allegations attempt to attribute to Arden a much broader role in the Program than the Arden-specific facts pleaded in the Complaint support.

That distinction is central to the claims challenged by this Motion. Plaintiffs' constitutional

claims under 42 U.S.C. § 1983 fail at the threshold because the Complaint does not plausibly allege that Arden, a private entity that provided units for Program participants, engaged in conduct fairly attributable to the State. Even assuming the state-action requirement was satisfied, the Complaint fails to allege the essential elements of Plaintiffs' constitutional claims against Arden. Plaintiffs' remaining federal and state-law claims suffer from the same fundamental defect: they rely substantially on conduct attributed to the City, Step Up, or the Motel Defendants rather than facts showing that Arden itself engaged in the conduct necessary to establish liability.

The claims addressed in this Motion therefore cannot be sustained against Arden on the facts pleaded. Where the Complaint identifies conduct specific to Arden, those facts do not establish the elements necessary to support the claims challenged here. And where Plaintiffs rely on conduct attributed to other Defendants or generalized allegations against the "Private Defendants," those allegations do not establish Arden's liability merely by grouping materially different private entities together. The challenged causes of action should therefore be dismissed as to Arden.

## II. LEGAL ARGUMENT

### A. Legal Standard for Motion to Dismiss

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss under Rule 12(b)(6)f, the complaint must allege sufficient facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when the pleaded facts permit the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient. *Id.* In evaluating a Rule 12(b)(6) motion, the Court accepts well-pled factual allegations as true and construes them in the light most favorable to the plaintiff, but it need not accept legal conclusions couched as factual allegations. *Id.* at 678–79. Dismissal is appropriate where the complaint lacks either a cognizable legal theory or sufficient facts to support a cognizable legal theory. *Taylor v. Yee*, 780 F.3d 928, 935 (9th Cir. 2015).

///

### B. Plaintiffs Fail to Plausibly Allege That Arden Acres Acted Under Color of State Law

Plaintiffs' claims under 42 U.S.C. § 1983 require them to allege that the challenged conduct was committed under color of state law. Where, as here, the defendant is a private entity, the Ninth Circuit recognizes four tests for determining whether private conduct may be attributed to the State: "(1) public function; (2) joint action; (3) governmental compulsion or coercion; and (4) governmental nexus." *Rawson v. Recovery Innovations, Inc.*, 975 F.3d 742, 747 (9th Cir. 2020) (quoting *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003)). Satisfaction of any one test may establish state action. *Id.* The inquiry is fact-specific and focuses on the "specific conduct of which the plaintiff complains." *Id.*

As to Arden Acres, the Complaint alleges that Arden housed Program participants pursuant to a contract with the City and/or Step Up and subsequently commenced or threatened eviction proceedings. Compl. ¶ 34. It further alleges that Arden management pushed residents out when its City contract ended at the end of March 2026, told residents that the Program was ending, and served certain remaining residents with three-day notices to pay rent or quit. *Id.* ¶¶ 59–60. The Complaint also alleges that Arden discarded Plaintiff Stotts's belongings after telling her she could return for them. *Id.* ¶ 76. The relevant inquiry is therefore whether the City's relationship with this particular conduct is sufficient to render Arden's conduct state action.

#### 1. Arden's Participation in the City's Shelter Program Does Not Satisfy the Public-Function Test.

The public-function test applies only where the function at issue is "both traditionally and exclusively governmental." *Rawson*, 975 F.3d at 747 (quoting *Kirtley*, 326 F.3d at 1093). A private entity does not become a state actor merely by performing services pursuant to a government contract. In *Rendell-Baker v. Kohn*, 457 U.S. 830, 840–42 (1982), the Supreme Court held that a private school was not a state actor despite receiving approximately 90 percent of its funding from public sources and being subject to extensive government regulation, explaining that private contractors do not become state actors merely through their "significant or even total engagement in performing public contracts."

Here, Plaintiffs allege that the City "delegated" administration of its shelter program to the Private Defendants and that those defendants decided who received, retained, and lost publicly funded

shelter. Compl. ¶ 62. Although not factually concrete as to Arden, the relevant question is not whether Arden performed a service the City chose to provide; it is whether that function has traditionally and exclusively been the prerogative of government. *Rendell-Baker*, 457 U.S. at 842. Courts applying the public-function test have concluded that operating a homeless shelter is not such a function. See *McKenzie v. Poverello Ctr*., Inc., No. CV 25-97-M-KLD, 2026 U.S. Dist. LEXIS 154619, at *22 (D. Mont. July 13, 2026); *Smith v. United Caring Servs*., 2025 WL 1672866, at *2 (7th Cir. June 13, 2025). Thus, neither the City's creation and funding of the Program nor Arden's contractual participation in it transforms Arden's provision of shelter into a traditionally and exclusively governmental function.

### 2. Plaintiffs Do Not Plausibly Allege Joint Action or a Sufficiently Close Nexus Between the City and Arden's Challenged Conduct.

The joint-action and governmental-nexus inquiries ask whether the relationship between the State and the challenged private conduct is sufficiently close that the private action may fairly be treated as that of the State itself. *Rawson*, 975 F.3d at 747–48. Where joint action is premised on conspiracy, the plaintiff must show an agreement or "meeting of the minds" to violate constitutional rights and a shared common objective. *Franklin v. Fox*, 312 F.3d 423, 445 (9th Cir. 2002).

Plaintiffs allege collectively that the Private Defendants were "willful participants in joint activity with the City," "executed the City's decision to terminate the Program," participated in a coordinated June 1 vacate-and-lockout operation, administered the DNR list, and disposed of participants' property "pursuant to and in concert with City direction and funding." Compl. ¶ 63. But those collective allegations do not identify facts showing participation with the City in the particular conduct attributed to Arden. The Complaint does not identify a City official who directed or participated in Arden's service of the March 28 notices, or allege any agreement between Arden and the City concerning those notices. *Id*. ¶¶ 59–60. Likewise, although Arden allegedly discarded Stotts's belongings, the Complaint does not identify any City official who directed, participated in, or agreed with Arden to undertake that act. *Id*. ¶ 76.

The Ninth Circuit's decisions illustrate the distinction. In *Howerton v. Gabica*, 708 F.2d 380, 384–85 (9th Cir. 1983), state action existed where police affirmatively participated throughout a private

landlord's eviction efforts, including appearing at multiple stages and personally intervening with the tenants. By contrast, generalized cooperation is insufficient where the alleged deprivation itself was not the product of substantial cooperative action. *Brunette v. Humane Soc'y of Ventura Cnty.*, 294 F.3d 1205, 1211–13 (9th Cir. 2002). And in *Rawson*, 975 F.3d at 753–54, the finding of state action rested on substantially greater governmental involvement, including state authorization necessary to continue detention, statutory commands, governmental constitutional duties, and involvement of a county prosecutor.

The Complaint alleges no comparable governmental involvement in Arden's challenged conduct. Allegations that the City funded the Program, retained contractual oversight, and decided to terminate the Program may establish a relationship between Arden and the City, but do not, without facts connecting the City to Arden's specific acts, plausibly establish that those acts may fairly be treated as acts of the City.

3. **Plaintiffs Do Not Plausibly Allege Governmental Compulsion or Coercion**.

Governmental compulsion or coercion exists where the State "has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Rawson*, 975 F.3d at 748 (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)).

Plaintiffs allege that the City decided to terminate the Program, funded and directed the transition, and retained contractual oversight and authority over the Program rules, placements, and exclusions. Compl. ¶¶ 64–65. Those allegations do not establish that the City coerced or significantly encouraged Arden's particular challenged decisions. The City's decision to terminate the Program or its contractual relationship with Arden is distinct from a directive requiring Arden to serve allegedly defective eviction notices or remove or discard a resident's personal property. The Complaint alleges no such directive.

Accordingly, although Plaintiffs allege that Arden participated in a City-funded shelter program and that the Program's termination affected Arden residents, they do not plausibly allege that Arden performed a traditionally exclusive governmental function or that the City jointly participated in, was sufficiently intertwined with, compelled, or significantly encouraged the particular conduct attributed

to Arden. Plaintiffs therefore fail to plausibly allege that Arden acted under color of state law, and their § 1983 claims against Arden should be dismissed.

**C. Even Assuming State Action, Plaintiffs' Constitutional Claims Independently Fail**

**1. Plaintiffs Fail to State a Fifth Amendment Takings Claim Against Arden Acres**

The Fifth Amendment prohibits the taking of private property "for public use, without just compensation." U.S. Const. amend. V. To state a takings claim, Plaintiffs must plausibly allege that they owned private property, that the property was taken for public use, and that they were not provided just compensation. *See Zeyen v. Bonneville Joint Dist .No. 93*, 114 F.4th 1129, 1139 (9th Cir. 2024).

Plaintiffs do not plausibly allege that Arden Acres took their property "for public use." In *Sanchez v. City of Fresno*, 914 F. Supp. 2d 1079, 1105–06 (E.D. Cal. 2012), the plaintiffs alleged that government officials unlawfully seized their personal property and asserted claims under both the Fourth Amendment and the Takings Clause. The court explained that the Takings Clause "requires compensation in the event of otherwise proper interference amounting to a taking," and held that "[t]he unlawful seizure of property therefore does not constitute 'public use.'" *Id.* at 1106 (quoting *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 543 (2005)).

The same distinction defeats Plaintiffs' Takings Clause claim here. Plaintiffs allege that Arden personnel wrongfully removed or discarded their personal belongings. Accepting those allegations as true, the alleged unlawful interference with Plaintiffs' property does not constitute a taking "for public use" under the Fifth Amendment. *Sanchez*, 914 F. Supp. 2d at 1105–06. Nor does Plaintiffs' conclusory allegation that the conduct occurred "in service of a public program" transform the allegedly wrongful disposal of personal property into a taking for public use.

Accordingly, Plaintiffs fail to state a Fifth Amendment Takings Clause claim against Arden Acres, and the Second Cause of Action should be dismissed as to Arden Acres.

**2. Plaintiffs Fail to State a Fourteenth Amendment Procedural Due Process Claim Against Arden**

Even assuming, arguendo, that Arden acted under color of state law, Plaintiffs fail to plausibly allege that Arden deprived them of a protected property or liberty interest without constitutionally

adequate process. To state a procedural due process claim, a plaintiff must allege "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process." *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993).

First, the Complaint does not allege that the Arden Plaintiffs who remain at the property have been deprived of their alleged tenancy interests. To the contrary, Plaintiffs expressly allege that Parks, Criswell-Tippins, Doxie, Miller, Moore, and Saito "remained and continue to remain in their units." Compl. ¶ 60. Arden allegedly served those Plaintiffs three-day notices advising that failure to pay rent or quit would result in unlawful-detainer proceedings. *Id.* Thus, even assuming Plaintiffs possess a constitutionally protected tenancy interest, the Complaint does not allege that Arden has deprived them of possession. Nor does an alleged failure to comply with California's requirements governing the three-day notices, standing alone, establish a federal due process violation. *See Swarthout v. Cooke*, 562 U.S. 216, 222 (2011) (per curiam).

The Complaint likewise fails to plead facts showing that Arden deprived any Plaintiff of Program benefits or imposed or enforced a DNR designation against any Plaintiff. Although Plaintiffs collectively allege that the "Private Defendants" administered Program benefits and the DNR exclusion list, Compl. ¶¶ 62–63, their specific factual allegations identify Step Up and the Motel Defendants—not Arden—as the entities that "created, maintained, communicated, and enforced" the DNR list. Compl. ¶ 52. Indeed, even as to Miller and Moore, who allegedly reside at Arden, Plaintiffs allege that the listed motels informed them that they were on a DNR list; Plaintiffs do not allege that Arden made that designation, communicated it to them, or denied them a Program placement on that basis. Compl. ¶ 28. Generalized allegations against the "Private Defendants" do not plausibly allege that Arden itself effected the particular deprivation on which these due process theories depend.

Nor does the alleged disposal of Stotts's personal property state a procedural due process claim. Although Plaintiffs allege that Arden told Stotts she could temporarily leave her belongings and later discarded them, they do not allege facts showing that this particular deprivation occurred pursuant to an established governmental policy or procedure. An unauthorized intentional deprivation of property does not violate procedural due process where an adequate post-deprivation remedy is available. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). California provides an adequate post-deprivation remedy

for property deprivations. *See Barnett v. Centoni*, 31 F.3d 813, 816–17 (9th Cir. 1994). Plaintiffs do not allege that such remedies were inadequate or unavailable.

Accordingly, even if Arden could be treated as a state actor, Plaintiffs fail to state a procedural due process claim against Arden based on their alleged tenancy interests, Program benefits, DNR designations, or personal property.

### 3. Plaintiffs Fail to State a State-Created Danger Claim Against Arden

Even assuming Arden acted under color of state law, Plaintiffs fail to allege that Arden affirmatively exposed any Plaintiff to an actual, particularized danger or acted with deliberate indifference to a known or obvious danger. *See Sinclair v. City of Seattle*, 61 F.4th 674, 680–82 (9th Cir. 2023). The state-created danger doctrine requires more than conduct that leaves a plaintiff exposed to generalized risks; the defendant must affirmatively place the plaintiff in a danger she otherwise would not have faced. *See Cobine v. City of Eureka*, 250 F. Supp. 3d 423, 432–33 (N.D. Cal. 2017). In Cobine, the court dismissed the claim where the alleged displacement of homeless residents did not place them in an inherently more dangerous situation, distinguishing *Sanchez,* 914 F. Supp. 2d at 1102, where officials allegedly destroyed homeless persons' shelters at the onset of winter knowing that freezing conditions threatened their survival.

Here, Plaintiffs collectively allege that "Defendants" exposed Program participants to extreme heat, violence, and other dangers, but fail to connect those dangers to Arden's conduct toward any particular Plaintiff. Six identified Arden residents allegedly remain in their units. Compl. ¶ 60. Although Stotts allegedly was displaced from Arden and had belongings discarded, the Complaint does not allege what actual, particularized danger Arden thereby created or increased as to Stotts, nor facts showing that Arden knew of and deliberately disregarded such a danger. Plaintiffs' generalized allegation that all "Defendants" possessed individualized knowledge of participants' vulnerabilities does not supply the missing Arden-specific facts, particularly where the Complaint attributes the collection and updating of that information to Step Up's case management. Compl. ¶ 111. Accordingly, Plaintiffs fail to plausibly allege either a particularized danger created by Arden or Arden's deliberate indifference to that danger.

//

**D. Plaintiffs Fail to State a Title III Americans with Disabilities Act ("ADA") Claim Against Arden Acres**

To state a claim under Title III of the ADA, a plaintiff must allege that: (1) the plaintiff is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of the disability. *Ariz. ex rel. Goddard v. Harkins Amusement Enters., Inc.*, 603 F.3d 666, 670 (9th Cir. 2010).

Even considering the allegations incorporated by reference into the Third Cause of Action, Plaintiffs do not allege facts satisfying these elements as to Arden Acres. Indeed, although the heading of the Third Cause of Action purports to assert Title III against "All Defendants," Plaintiffs' specific Title III allegations are expressly directed only to the "Motel Defendants." Paragraph 93 alleges that "[e]ach Motel 6 location is a place of public accommodation" and describes alleged discriminatory conduct by the Motel Defendants. It does not allege that Arden Acres owns, leases, or operates a place of public accommodation, or that Arden Acres denied any Plaintiff a public accommodation because of disability. Compl. ¶ 93. Nor do the preceding allegations incorporated into the claim supply these missing elements.

The absence of such allegations is particularly significant because residential housing does not, merely, by virtue of its residential character, constitute a place of public accommodation under Title III. *See Indep. Hous. Servs. of S.F. v. Fillmore Ctr. Assocs.*, 840 F. Supp. 1328, 1344 (N.D. Cal. 1993). Although a particular portion of a residential facility may fall within Title III where it independently qualifies as a public accommodation, the inquiry turns on the actual use of the facility. *See Langer v. Kiser*, 57 F.4th 1085, 1093–94 (9th Cir. 2023). Here, Plaintiffs allege no facts identifying any portion of Arden Acres that qualifies as a place of public accommodation under Title III.

Accordingly, Plaintiffs have not plausibly alleged a Title III violation by Arden Acres, and the Third Cause of Action should be dismissed as to Arden Acres.

**E. Plaintiffs Fail to State a Claim Against Arden Under Violence Against Women Act ("VAWA")**

VAWA's housing protections apply to "covered housing programs" identified in 34 U.S.C. §

12491(a)(3), (b)(1). Plaintiffs do not allege that Arden participated in or received assistance through any of the federally assisted housing programs enumerated in § 12491(a)(3). Although Plaintiffs allege that Arden housed Program participants pursuant to a contract with the City and/or Step Up, Compl. ¶ 34, they do not allege that this arrangement was funded or administered through a covered housing program within the meaning of VAWA.

Moreover, although the Seventeenth Cause of Action is captioned against "all Defendants," Plaintiffs specifically allege that VAWA applies to the City, Step Up, participating motels, and City officials—not Arden. Compl. ¶ 154. The alleged failure to develop an Emergency Transfer Plan likewise concerns the City and contracted motel operators, while the alleged use of DNR lists concerns Defendant Motels. *Id.* ¶ 156. Plaintiffs therefore fail to allege facts establishing that Arden was subject to, or violated, the VAWA obligations on which the Seventeenth Cause of Action is based.

**F. Plaintiffs Fail to State the Following State-Law Claims Against Arden**

1. **Plaintiffs Fail to State a FEHA Housing-Discrimination Claim Against Arden**

Plaintiffs fail to plausibly allege either intentional disability discrimination or a failure to accommodate by Arden. Intentional discrimination under FEHA requires that disability be a "motivating factor" in the challenged housing practice. Gov. Code § 12955.8. Although Plaintiffs allege collectively that "Defendants discriminated against Plaintiffs because of disability," Compl. ¶ 125, they plead no facts plausibly showing that disability was a motivating factor in Arden's challenged housing conduct. To the contrary, the Complaint alleges that Arden residents were displaced when Arden's contract with the City ended. *Id.* ¶ 59. The mere fact that a disabled resident was subjected to an adverse housing action does not plausibly establish that disability motivated that action.

Plaintiffs likewise fail to plead a reasonable accommodation claim against Arden. Such a claim requires that the housing provider knew or should have known of the disability, that the requested accommodation was necessary to afford equal use and enjoyment of the dwelling, and that the provider refused the requested accommodation. *Auburn Woods I Homeowners Ass'n v. Fair Employment & Housing Comm'n*, 121 Cal. App. 4th 1578, 1592 (2004). Although ¶ 125 identifies particular accommodation requests by Plaintiffs Lockett and Gonzalez, those allegations concern Motel 6. And

while Plaintiffs allege collectively that "Defendants" refused reasonable accommodations, the Complaint identifies no specific accommodation requested by an Arden Plaintiff which was refused by Arden. Accordingly, Plaintiffs fail to plead facts establishing a reasonable accommodation claim against Arden.

**2. Plaintiffs Fail to State a Claim Against Arden for Breach of the Implied Warranty of Habitability**

The implied warranty of habitability requires a landlord to maintain residential premises in a condition fit for human occupation. *Green v. Superior Court*, 10 Cal. 3d 616, 637 (1974). A claim requires, among other things, a materially defective condition affecting the habitability of the premises, notice to the landlord, and a reasonable opportunity to correct the condition. *Peviani v. Arbors at California Oaks Property Owner, LLC*, 62 Cal. App. 5th 874, 891 (2021).

Plaintiffs do not identify any materially defective condition affecting an Arden Plaintiff's unit. The only specific condition alleged in the Eleventh Cause of Action is an unsecured air-conditioning unit in Plaintiff Gonzalez's room, while the remaining allegations refer generically to unspecified "conditions of disrepair" and notice to "motel and park staff." Compl. ¶ 133. Such collective and conclusory allegations do not plausibly establish a breach of the warranty by Arden.

Nor does Plaintiffs' alleged "breach by exclusion" state a habitability claim. Plaintiffs allege that excluding them from their units and disposing of their belongings deprived them of habitable premises and therefore constituted a "total breach" of the warranty. Compl. ¶ 134. But the implied warranty concerns conditions rendering the premises unfit or untenantable; exclusion from otherwise habitable premises does not itself constitute a defective condition affecting habitability. See *Green*, 10 Cal. 3d at 637; *Peviani*, 62 Cal. App. 5th at 891. Accordingly, the Eleventh Cause of Action fails to state a claim against Arden.

**3. Plaintiffs Fail to State a Claim Under Article I, Section 1 of the California Constitution**

Plaintiffs' Fourteenth Cause of Action alleges that Arden violated Article I, section 1 of the California Constitution by increasing Plaintiffs' exposure to the dangers of homelessness and thereby interfering with their right to "pursue and obtain safety." Compl. ¶ 147. But Article I, section 1's

declaration of an inalienable right to pursue and obtain safety does not itself establish an affirmative duty to guarantee safety. *Clausing v. San Francisco Unified School District*, 221 Cal. App. 3d 1224, 1237 & n.6 (1990). Nor does Article I, section 1 provide a direct cause of action for monetary damages. *Blanco v. County of Kings*, 142 F. Supp. 3d 986, 1001 (E.D. Cal. 2015). Because Plaintiffs base this cause of action directly on the constitutional right to "pursue and obtain safety," they fail to state a cognizable claim against Arden.

**4. Plaintiffs Fail to State a Procedural Due Process Claim Under Article I, Section 7 of the California Constitution**

Plaintiffs allege that Defendants violated Article I, section 7 of the California Constitution by failing to provide rules governing the City Motel Program, pre-deprivation notice, an opportunity to be heard, and a right to appeal before Plaintiffs were removed from the Program. Compl. ¶ 149. However, the Complaint does not allege facts showing that Arden made the decision to terminate Plaintiffs' Program benefits or that Arden was responsible for providing the Program-level notice, hearing, or appeal procedures Plaintiffs allege were constitutionally required. Plaintiffs' collective allegation that "Defendants" failed to provide these procedures does not identify what Arden itself allegedly failed to do in connection with Plaintiffs' removal from the Program.

Moreover, to the extent Plaintiffs seek monetary damages for the alleged violation of Article I, section 7, California does not recognize a direct damages remedy for a violation of the state constitutional due process clause. *Katzberg v. Regents of University of California*, 29 Cal. 4th 300, 329 (2002).

**5. Plaintiffs Fail to State the Sixteenth Cause of Action Against Arden**

**a. Plaintiffs Fail to State a Breach-of-Contract Claim as Third-Party Beneficiaries**

Plaintiffs fail to state a breach-of-contract claim against Arden as third-party beneficiaries. A third party may enforce a contract only where (1) the third party would benefit from the contract; (2) a motivating purpose of the contracting parties was to provide that benefit; and (3) permitting third-party enforcement is consistent with the objectives of the contract and the reasonable expectations of the contracting parties. *Goonewardene v. ADP, LLC*, 6 Cal. 5th 817, 830 (2019). All three requirements

must be satisfied. *Id.*

Here, Paragraph 151 refers generally to contracts between the City and Step Up and between the City and participating motels and merely concludes that Plaintiffs are "fully vested intended beneficiaries." Compl. ¶ 151. Although Plaintiffs elsewhere allege that Arden housed Program participants under contract with the City and/or Step Up, they do not identify any provision of that contract conferring an enforceable benefit on Plaintiffs, any contractual obligation owed by Arden to Plaintiffs, or any contractual provision Arden allegedly breached. Plaintiffs' conclusory assertion that they are intended beneficiaries therefore does not plausibly satisfy the requirements for third-party enforcement under *Goonewardene*.

**b. Plaintiffs Fail to State a Claim for Promissory Estoppel**

Under California law, promissory estoppel requires "(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [that] reliance [be] both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance." *Orcilla v. Big Sur, Inc.*, 244 Cal. App. 4th 982, 1003 (2016). Conclusory allegations of reliance are insufficient where the complaint fails to allege facts showing how the plaintiff changed position in reliance on the alleged promise. *Id.* at 1004.

Here, Plaintiffs allege generally that "Defendants" made commitments concerning continued shelter, voucher acceptance, and assistance obtaining permanent housing, but do not identify any such promise made by Arden or allege facts showing that an Arden Plaintiff changed position in reliance on it. Compl. ¶ 152. Although Plaintiffs separately allege that Arden told Plaintiff Stotts she could temporarily leave her belongings and return for them, Compl. ¶¶ 26, 55, that alleged representation is distinct from the continued-shelter, voucher, and housing-assistance commitments identified as the basis for Plaintiffs' promissory-estoppel allegations in Paragraph 152. Accordingly, Plaintiffs fail to plead detrimental reliance on a promise by Arden.

**c. Plaintiffs Fail to Plead Fraud with Particularity**

To state a claim for fraud under California law, a plaintiff must allege a misrepresentation, knowledge of falsity, intent to induce reliance, justifiable reliance, and resulting damages. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009). Because fraud must satisfy Federal Rule of

Civil Procedure 9(b), Plaintiffs must also plead the "who, what, when, where, and how" of the alleged misconduct. *Id.* at 1124; *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

Plaintiffs do not satisfy that standard. Although the Sixteenth Cause of Action purports to assert fraud against all Defendants, Plaintiffs allege only that, "[t]o the extent" Defendants made verbal or written commitments concerning continued shelter, voucher acceptance, and assistance obtaining permanent housing, Plaintiffs relied upon those commitments only to be "fraudulently betrayed." Compl. ¶ 152. Plaintiffs do not identify any such representation made by Arden, who made it, to whom it was made, or why it was false when made.

Nor do the incorporated allegations cure those deficiencies. Although Plaintiffs allege that Arden residents received "misleading flyers" and "false assurances" concerning relocation, Compl. ¶ 59, they do not identify the particular false representation, speaker, or facts showing falsity. And although Plaintiff Stotts alleges that Arden personnel told her she could temporarily leave her belongings and return for them, Compl. ¶¶ 26, 55, a promise concerning future conduct constitutes fraud only if made without any intention of performing it. Cal. Civ. Code § 1710(4); *Engalla v. Permanente Medical Group, Inc.*, 15 Cal. 4th 951, 973–74 (1997). Subsequent nonperformance alone is insufficient to establish that fraudulent intent. *Tenzer v. Superscope, Inc.*, 39 Cal. 3d 18, 30–31 (1985). Plaintiffs allege only that Arden later discarded Stotts's belongings, not that the promise was made without an intention to perform it. Accordingly, Plaintiffs fail to state a fraud claim against Arden.

## III. CONCLUSION

For the foregoing reasons, Arden Acres Modular Home Park respectfully requests that the Court grant this Motion and dismiss the causes of action challenged herein as against Arden.

Respectfully submitted,

Dated: September 11, 2026

BOWLES& VERNA LLP

By: */s/ Richard T. Bowles*
RICHARD T. BOWLES
Attorneys for Defendant
ARDEN ACRES MODULAR HOME PARK