Dean Gazzo Roistacher LLP
Lee H. Roistacher, Esq. (SBN 179619)
Nicolette A. Yohn, Esq. (SBN 364499)
440 Stevens Avenue, Suite 100
Solana Beach, CA 92075
Telephone: (858) 380-4683
Facsimile: (858) 492-0486
E-mail: lroistacher@deangazzo.com
nyohn@deangazzo.com

Attorneys for Defendants
City of Sacramento and Brian Pedro

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

SACRAMENTO HOMELESS UNION, a local of the CALIFORNIA HOMELESS UNION/STATEWIDE ORGANIZING COUNCIL, on behalf of itself and its members; ANTWONN BROOKS; AMBER CRISWELL-TIPPINS; KIANA CASH; SHAYLYNN DOXIE; MARCELLA PARKS; PATRICIA MILLER; ERIC MOORE; TANIKA WILLIAMS; TANA SAITO; HASAWNI PEETE; IVEE STOTTS; MARTIN O'RAY; MONAE RIDDLE; TATTIANA HEARST; CHERISE GREEN; UNIKA BROADWAY; SAMANTHA RUBIO; DELANNA GONZALEZ; SHEILA LOWE; TATTIANA PALACA; AMY HECKART; JEFFREY SMITH; JONSHEY WILLIAMS; PATRICK MURPHY; HOLLY MERRITT; LAWRENCE GORE; MARIAH MURPHY; IDA LOCKETT; JOHN AND JANE DOES A–B (adult members of "Household A"), each individually and on behalf of their minor children,; JANE DOES ONE AND TWO; and all those similarly situated,

Plaintiffs,

v.

CITY OF SACRAMENTO, a municipal corporation; BRIAN PEDRO, Director of City Department of Community Response (DCR), sued in both his official and individual capacities; STEP UP ON SECOND STREET, INC., a California

Case No.: 2:26-cv-02473-TLN-AC

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT BY DEFENDANTS CITY OF SACRAMENTO AND BRIAN PEDRO**

Date: January 14, 2027
Time: 2:00 p.m.
Courtroom: 2
District Judge: Hon. Troy L. Nunley
Magistrate: Hon. Allison Claire

Complaint Filed: July 15, 2026
Trial Date: None set

nonprofit corporation; Owners and Managers of MOTEL 6 NORTHGATE; MOTEL 6 JIBBOOM; MOTEL 6 COLLEGETOWN; ARDEN ACRES MODULAR HOME PARK; and DOES 1–100, inclusive,

Defendants.

///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///

# TABLE OF CONTENTS


INTRODUCTION..........12

FACTS ALLEGED IN THE COMPLAINT RELEVANT TO PLAINTIFFS' CLAIMS..........12

AUTHORITY..........13

DISCUSSION..........14

A. SHU Lacks Organizational and Associational Standing..........14

1. No organizational standing because SHU alleges no injury-in-fact..........14

2. No associational standing because individual member participation is required..........15

B. The Court Should Dismiss the "Shotgun Pleading"..........16

C. The Court Should Dismiss "Defendant" Brian Pedro..........16

D. Federal Claims..........17

1. Violence Against Women Act provides no private right of action (17th claim)..........17

2. Plaintiff's 5th Amendment takings claim fails because no private property was taken for public use (2nd claim)..........17

3. Plaintiffs' ADA/RA claims fail because the City did nothing "because of" a disability (3rd claim)..........18

4. Plaintiffs' § 1983 municipal liability claim is insufficiently plead (1st, 5th, and 6th claims)..........19

E. State Law Claims..........21

1. All plaintiffs' state law claims are subject to dismissal because they have not complied with the GCA's claim presentation mandate..........21

2. Plaintiffs' § 815.6 claim fails because plaintiffs fail to allege an enactment imposing a mandatory duty (8th claim)..........25

3. Plaintiffs' FEHA housing discrimination claim fails because the City is not an "owner" (9th claim)..........27

4. No right of action exists under Article 1, section 1 of the California Constitution (14th claim)..........28

5. Plaintiffs allege no statutorily conferred benefit of which they were denied in violation of Article 1, section 7 of the California Constitution (15th claim)..........29

6. Plaintiffs' breach of contract claim fails because they do not sufficiently allege third party beneficiary status (16th claim)…………30

# TABLE OF AUTHORITIES

## Cases

*Adams v. Garcia*
2024 U.S. Dist. LEXIS 110349 (C.D. Cal. May 3, 2024)……………………………17

*AE ex rel. Hernandez v. County of Tulare*
666 F.3d 631 (9th Cir. 2012)……………………………………………………..19

*Ahmadzai v. Cty. of Sacramento*
2026 U.S. Dist. LEXIS 211229 (E.D. Cal. Sep. 16, 2026)……………………...…19, 29

*Allen v. Cty. of Sonoma*
2017 U.S. Dist. LEXIS 133548 (N.D. Cal. Aug. 18, 2017)…………………..…….28, 29

*Ariz. All. for Retired Ams. v. Mayes*
186 F.4th 622 (9th Cir. 2026)…………………………………………………....14, 15

*Ashcroft v. Iqbal*
556 U.S. 662 (2009)……………………………………………………...……13, 14, 19

*Ass'n for Accessible Meds. v. Bonta*
766 F. Supp. 3d 1020 (E.D. Cal. 2025)………………………………………..…15, 16

*Ass'n of Christian Sch. v. Stearns*
678 F. Supp. 2d 980 (C.D. Cal. 2008)………………………………………………16

*Bates v. Arata*
2008 U.S. Dist. LEXIS 23910 (N.D. Cal. Mar. 26, 2008)…………………………..28

*Bearden v. Alameda Cty.*
2020 U.S. Dist. LEXIS 56271 (N.D. Cal. Mar. 30, 2020)…………………………...27

*Bell Atl. Corp. v. Twombly*
550 U.S. 544 (2007)…………………………………………………………13, 14, 19

*Becerra v. Cty. of Santa Cruz*
68 Cal. App. 4th 1450 (1998) ……………………………………………………..…26

*Benavidez v. Cty. of San Diego*
993 F.3d 1134 (9th Cir. 2021)…………………………………………………..…19, 20

*Bennett v. Gallacher*
2018 Cal. App. Unpub. LEXIS 1916 (Mar. 20, 2018)………………………………27

*Beverly v. Cty. of Orange*
2022 U.S. App. LEXIS 29549 (9th Cir. Oct. 24, 2022)……………………………..17

*Bridges v. Cal. Dep't of Corr. & Rehab.*
2023 U.S. Dist. LEXIS 183027 (E.D. Cal. Oct. 10, 2023)…………………………..23

*Castillo v. Yuma Cty. Bd. of Supervisors*
2026 U.S. Dist. LEXIS 94097 (D. Ariz. Apr. 29, 2026)……………………………20

*Chang v. Beauchamp*
2021 U.S. Dist. LEXIS 33893 (N.D. Cal. Jan. 19, 2021)....................................30

*Charbonneau v. Alaska Family Court*
2025 U.S. Dist. LEXIS 187339 (D. Alaska Sep. 24, 2025)................................17

*Chorn v. Workers' Comp. Appeals Bd.*
245 Cal. App. 4th 1370 (2016)............................................................30

*City of San Jose v. Superior Court*
12 Cal. 3d 447 (1974)....................................................................22

*City of Stockton v. Superior Court*
42 Cal. 4th 730 (2007)...................................................................22

*Clausing v. San Francisco Unified School Dist.*
221 Cal. App. 3d 1224 (1990)..............................................................28

*Cohen v. Cty.of Santa Cruz*
2017 U.S. Dist. LEXIS 16547 (N.D. Cal. Feb. 3, 2017)......................................26

*Conservation Force v. Salazar*
646 F.3d 1240 (9th Cir. 2011).............................................................13

*Cooley v. City of L.A.*
2019 U.S. Dist. LEXIS 73735 (C.D. Cal. May 1, 2019).......................................17

*Crossley v. California*
479 F. Supp. 3d 901 (S.D. Cal. 2020)......................................................29

*Dateline Builders v. City of Santa Rosa*
146 Cal. App. 3d 520 (1983)...............................................................31

*Davis v. City of Ellensburg*
869 F.2d 1230 (9th Cir. 1989).............................................................20

*Davis v. Herrera*
2026 U.S. Dist. LEXIS 222114 (E.D. Cal. Sep. 29, 2026).....................................22

*DiCampli-Mintz v. Cty. of Santa Clara*
55 Cal. 4th 983 (2012)....................................................................22

*Dison v. Cal. Dep't of Corr. & Rehab.*
2026 U.S. Dist. LEXIS 200216 (E.D. Cal. Sep. 3, 2026)..................................16, 17

*Doe v. Grewal*
2024 U.S. Dist. LEXIS 211606 (N.D. Cal. Nov. 20, 2024)................................29, 30

*Dougherty v. City of Covina*
654 F.3d 892 (9th Cir. 2011)..............................................................19

*D.R. v. Contra Costa Cnty.*
2024 U.S. Dist. LEXIS 71158 (N.D. Cal. Apr. 18, 2024)......................................23

*FDA v. All. for Hippocratic Med.*
602 U.S. 367 (2024)………………………………………………..…………14, 15

*Ford Motor Warranty Cases*
89 Cal. App. 5th 1324 (2023)……………………………………………….…31

*Gatlin v. Contra Costa Cty.*
2024 U.S. Dist. LEXIS 147136 (N.D. Cal. Aug. 16, 2024)……………………….…26

*Gatto v. Cty. of Sonoma*
98 Cal. App. 4th 744 (2002)…………………………………………………24

*Gibson v. City of Portland*
165 F.4th 1265 (9th Cir. 2026)………………………………………………16

*Gonzalez v. Cty. of Merced*
2017 U.S. Dist. LEXIS 40705 (E.D. Cal. Mar. 21, 2017)……………………………19

*Goonewardene v. ADP, LLC*
(2019) 6 Cal. 5th 817 (2019)………………………………………………...31

*Guzman v. County of Monterey*
46 Cal. 4th 887 (2009)………………………………………………………25

*Habtemariam v. Vida Capital Grp., LLC*
2021 U.S. Dist. LEXIS 93194 (E.D. Cal. May 14, 2021)……………………………..30

*Harland v. City of W. Hollywood*
120 Cal. App. 5th 1166 (2026)………………………………………………22

*Herrera v. Zumiez, Inc.*
953 F.3d 1063 (9th Cir. 2020)..........................................................................................24

*Hunt v. Wash. State*
432 U.S. 333 (1977)………………………………………………………....15

*Hyde v. City of Willcox*
23 F.4th 863 (9th Cir. 2022)……………………………………………...…13

*In re Groundwater Cases*
154 Cal. App. 4th 659 (2007)……………………………………………..26

*Jones v. L.A. Cent. Plaza Ltd. Liab. Co.*
74 F.4th 1053 (9th Cir. 2023)……………………………………………..13

*Judd v. Weinstein*
967 F.3d 952 (9th Cir. 2020)……………………………………………..24

*Karim-Panahi v. L.A. Police Dep't*,
839 F.2d 621 (9th Cir. 1988)……………………………………………..22

*Katzberg v. Regents of the University of California*
29 Cal.4th 300 (2002)………………………………………………...……..28

*Lake Almanor Associates L.P. v. Huffman-Broadway Group, Inc.*
178 Cal. App. 4th 1194 (2009)...........................................................31

*Las Lomas Land Co., LLC v. City of L.A.*
177 Cal. App. 4th 837 (2009)...........................................................29

*Lawendowski v. City of Long Beach*
2017 Cal. App. Unpub. LEXIS 1303 (Feb. 21, 2017)...........................................31

*Leite v. Crane Co.*
749 F.3d 1117 (9th Cir. 2014)...........................................................13

*Le Mere v. Los Angeles Unified Sch. Dist.*
35 Cal. App. 5th 237 (2019)...........................................................22

*Lockhart v. Cty. of L.A.*
155 Cal. App. 4th 289 (2007)...........................................................27

*Lowry v. Port San Luis Harbor Dist.*
56 Cal. App. 5th 211 (2020)...........................................................22

*Machado v. Boyd*
2025 U.S. Dist. LEXIS 89347 (N.D. Cal. May 9, 2025)...........................................29

*Mag US Lounge Mgmt. LLC v. Ontario Int'l Airport Auth.*
2025 U.S. Dist. LEXIS 76482 (C.D. Cal. Apr. 22, 2025)...........................................27

*Mangold v. California Pub. Utils. Comm'n*
67 F.3d 1470 (9th Cir. 1995)...........................................................22

*Manns v. Cty. of San Bernardino*
2023 U.S. Dist. LEXIS 38290 (C.D. Cal. Mar. 6, 2023)...........................................26

*Markson v. Cty. of L.A.*
2026 U.S. Dist. LEXIS 109879 (C.D. Cal. Apr. 8, 2026)...........................................20

*Martinez v. Socoma Cos.*
11 Cal. 3d 394 (1974)...........................................................30, 31

*Mayfield v. City of Mesa*
131 F.4th 1100 (9th Cir. 2025)...........................................................18

*Mayfield v. Cty. of Merced*
2014 U.S. Dist. LEXIS 158648 (E.D. Cal. Nov. 10, 2014)...........................................31

*McWilliams v. City of Long Beach*
56 Cal. 4th 613 (2013)...........................................................21, 22

*Monell v. Dep't of Soc.Servs.*
436 U.S. 658 (1978)...........................................................19, 20, 21

*Moore v. L.A. Unified Sch. Dist.*
2025 U.S. Dist. LEXIS 259059 (C.D. Cal. Dec. 12, 2025)...........................................23

*Mussi v. Fontes*
2026 U.S. App. LEXIS 7775 (9th Cir. Mar. 17, 2026)……15

*Myers v. Cty. of Fresno*
2023 U.S. Dist. LEXIS 165884 (E.D. Cal. Sep. 18, 2023)……20

*Neuroth v. Mendocino Cty.*
2018 U.S. Dist. LEXIS 149492 (N.D. Cal. Aug. 31, 2018)……20

*Parker v. Alexander*
171 F.4th 146 (2d Cir. 2026)……17

*Pembaur v. City of Cincinnati*
475 U.S. 469 (1986)……21

*Pickering v. Enenmoh*
722 F. App'x 695 (9th Cir. 2018)……22

*Piggee v. Taylor*
2026 U.S. Dist. LEXIS 194766 (E.D. Cal. Aug. 28, 2026)……17

*Quigley v. Garden Valley Fire Protection Dist.*
7 Cal. 5th 798 (2019)……21

*Posey v. California*
180 Cal. App. 3d 836 (1986)……27

*Rent Stabilization Ass'n v. Dinkins*
5 F.3d 591 (2d Cir. 1993)……16

*Rodriguez v. Cty. of L.A.*
891 F.3d 776 (9th Cir. 2018)……19, 20

*Rubenstein v. Doe No. 1*
3 Cal. 5th 903 (2017)……22

*Ryan v. Cal. Interscholastic Fed'n-San Diego Section*
94 Cal. App. 4th 1048 (2001)……29, 30

*Samuels v. FEMA*
2023 U.S. Dist. LEXIS 132659 (C.D. Cal. July 24, 2023)……17

*Sanchez v. City of Fresno*
914 F. Supp. 2d 1079 (E.D. Cal. 2012)……17, 18

*Shirk v. Vista Unified School Dist.*
42 Cal. 4th 201 (2007)……22

*Sierra Club v. State Bd. of Forestry*
7 Cal. 4th 1215 (1994)……23, 24

*Sierra Med. Servs. Alliance v. Kent*
883 F.3d 1216 (9th Cir. 2018)……17

*S&J Logistics, Inc. v. United Nat'l Ins. Co.*
2024 U.S. Dist. LEXIS 76547 (E.D. Cal. Apr. 26, 2024)…………………………..31

*Snipes v. City of Bakersfield*
145 Cal. App. 3d 861 (1983)……………………………………………………….23, 24

*Spokeo, Inc. v. Robins*
578 U.S. 330 (2016)……………………………………………………………...14

*State v. Superior Court*
32 Cal. 4th 1234 (2004)…………………………………………………………..22

*State Dep't of State Hosps. v. Superior Court*
61 Cal. 4th 339 (2015)……………………………………………………………25

*Stewart v. Smith*
2017 U.S. Dist. LEXIS 398 (N.D. Cal. Jan. 3, 2017)……………………………...29

*Sullivan v. City of Sacramento*
190 Cal. App. 3d 1070 (1987)……………………………………………………26

*Tabayoyon v. City of Vacaville*
2021 U.S. Dist. LEXIS 5972 (E.D. Cal. Jan. 11, 2021)…………………………….20, 21

*Tesoro Ref. & Mktg. Co. LLC v. City of Carson*
20 Cal. 5th 531 (2026)…………………………………………………..….21, 22

*Thomas v. Mundell*
572 F.3d 756 (9th Cir. 2009)……………………………………………………...13

*Trevino v. Gates*
99 F.3d 911 (9th Cir. 1996)……………………………………………………….19

*United States v. Morrison*
529 U.S. 598 (2000)………………………………………………………………17

*Warth v. Seldin*
422 U.S. 490 (1975)……………………………………………...………..…15

*Williams v. City of Fresno*
2026 U.S. Dist. LEXIS 188715 (E.D. Cal. Aug. 21, 2026)…………………………22

*Williams v. Horvath*
16 Cal. 3d 834 (1976)……………………………………………………………..21

*Wilson v. Cty. of San Diego*
91 Cal. App. 4th 974 (2001)………………………………………………..…25, 27

*Winsor v. Sequoia Benefits & Ins. Servs., LLC*
62 F.4th 517 (9th Cir. 2023)………………………………………………………14

**Statutes and Rules**

29 U.S.C. § 794……………………………………………………………………..18

42 U.S.C. §§ 11371, et seq……………………………………………………….…..…26
42 U.S.C. § 1983……………………………..……………………………………12, 19
42 U.S.C. § 12132…………………………………………………………………...18
Fed. R. Civ. P. 8………………………………………………………………..……16, 26
Fed. R. Civ. P. 12……………………………………………………………………13
Cal. Civ. Code § 1559………………………………………………………………30
Cal. Gov’t Code § 810.6……………………………………………………..…25, 27
Cal. Gov’t Code § 811.6……………………………………………………………25
Cal. Gov’t Code § 811.8……………………………………………………………25
Cal. Gov’t Code § 815.2……………………………………………………………12
Cal. Gov’t Code § 815.4……………………………………………………………12
Cal. Gov’t Code § 815.6…………………………………………………….……12, 25, 26
Cal. Gov’t Code § 12927 ……………………………………………………..…27
Cal. Gov’t Code § 12940……………………………………………………………23
Cal. Gov’t Code § 12955……………………………………………………...…12, 24, 27
Cal. Gov’t Code § 12960……………………………………………………………23
Cal. Gov’t Code § 12965…………………………………………………………....23
Cal. Gov’t Code § 12989.1…………………………………………………………24

**Constitutional Provisions**

Cal. Const. Art. I, § 1………………………………………………………...……..12, 28
Cal. Const. Art. I, § 7……………………………………………………………….12, 29

## INTRODUCTION

Sacramento Homeless Union (SHU) and 32 individuals staying at Motel 6 Northgate, Motel 6 Jibboom, Motel 6 Collegetown or Arden Acres Modular Home Park ("Motels") seek damages and equitable relief with a difficult to decipher 49-page complaint asserting 17 federal and state law claims against the City, the Motels and the City' Motel Shelter Program (MSP) administrator Step Up on Second Street arising from the alleged "June 1, 2026 lockout" during a transition from the MSP to the Hotel Voucher Program (HVP). *See generally* Doc. 1.

Plaintiffs allege these federal claims against the City: (1) § 1983 - unreasonable seizure of property under the 4th Amendment (1st claim); (2) § 1983 - uncompensated taking under the 5th and 14th Amendments (2nd claim); (3) Title II of the ADA and § 504 of the Rehabilitation Act (3rd claim); (4) § 1983 – 14th Amendment procedural due process (5th claim); (5) § 1983 – 14th Amendment substantive due process/state created danger (6th claim); and (6) Violence against Women Act (VAWA) (17th claim). Plaintiffs allege vicarious liability state law claims against the City under California Government Code § 815.2 and § 815.4[1] for: (1) negligent hiring, retention and supervision (7th claim); (2) intentional infliction of emotional distress (12th claim); (5) negligent infliction of emotional distress (13th claim). Plaintiffs allege direct liability claims against the City for: (1) breach of mandatory duty under § 815.6 (8th claim); (2) violations of the Fair Employment and Housing Act (FEHA) under § 12955 (9th claim); (3) violations of Article 1, §§ 1 and 7 of the California Constitution (14th and 15th claims); and (4) breach of contract (16th claim). Doc. 1, pp. 24-38, 40-46.

The complaint suffers from myriad defects warranting dismissal.

## FACTS ALLEGED IN THE COMPLAINT RELEVANT TO PLAINTIFFS' CLAIMS

Through "state and federal funding," the MSP provided non-congregate and non-transient shelter and support services to Sacramento's unhoused residents. *Id.,* ¶¶ 37, 39. Through contracts with the City, the Step Up managed and administered the MSP and the

---

[1] Other than § 1983, unadorned statutory references are to California's Government Code. § 815.2 and § 815.4 provide a statutory basis for vicarious liability against the City.

Motels rented rooms to MSP participants paid through the MSP. *Id.*, ¶¶ 31-34, 38-39. Between March 30 and June 1, 2026, the City transitioned from the MSP to the HVP. *Id.*, ¶¶ 31-34. In March 2026, Step Up told MSP participants they would be transitioned into the HVP on June 1, 2026. *Id.*, ¶¶ 45-47. On May 30, 2026, Step Up told plaintiffs to take their belongs from their rooms for regular cleaning and would later be told where to relocate. Upon returning, "motel management" said "placement had not been secured" and they couldn't return to their existing rooms. *Id.*, ¶¶ 49-51. Some plaintiffs were told they were on a "do not rent" list when trying to secure rooms at other locations. *Id.*, ¶¶ 52-53. Some plaintiffs had property destroyed or stolen and some refused to leave and are being evicted. *Id.*, ¶¶ 54-55, 59-60, 76.

**AUTHORITY**

Under Federal Rule of Civil Procedure 12(b)(6), dismissal of a complaint is proper "if there is a lack of a cognizable legal theory," *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011), or "if it fails to include 'enough facts to state a claim to relief that is plausible on its face,'" *Hyde v. City of Willcox*, 23 F.4th 863, 868 (9th Cir. 2022).

"A complaint's claims are plausible when the pleaded facts 'allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Hyde*, 23 F.4th at 868. "Threadbare recitals of the elements," "conclusory statements," and "'legal conclusion[s] couched as [] factual allegation[s]'" are insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Likewise insufficient are '"naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Under Rule 12(b)(1), a defendant may challenge standing which "is a necessary element of federal-court jurisdiction" and a "threshold question in every federal case." *Thomas v. Mundell*, 572 F.3d 756, 760 (9th Cir. 2009). "A 'facial' attack accepts the truth of the plaintiff's allegations but asserts that they 'are insufficient on their face to invoke federal jurisdiction,'" and are resolved like "a motion to dismiss under Rule 12(b)(6)." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014); *see Jones v. L.A. Cent. Plaza Ltd. Liab. Co.*, 74 F.4th 1053, 1056 n.1 (9th Cir. 2023) (standing allegations must satisfy *Iqbal/Twombly*). A plaintiff must '"clearly allege facts demonstrating" "(i) … an injury in fact that is concrete,

particularized, and actual or imminent; (ii) … likely caused by the defendant; and (iii) … redress[able] by judicial relief." *Winsor v. Sequoia Benefits & Ins. Servs.*, LLC, 62 F.4th 517, 523 (9th Cir. 2023) (simplified); *see Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) ("Where, as here, a case is at the pleading stage, the plaintiff must clearly allege facts demonstrating each element.") (simplified).

**DISCUSSION**

**A. SHU Lacks Organizational and Associational Standing**

"Article III of the Constitution extends the judicial power of federal courts to 'Cases' and 'Controversies' and "'[a]n essential and unchanging part of the case-or-controversy requirement' is the doctrine of standing—the idea that a plaintiff can invoke the judicial power only to decide real disputes and not to answer abstract questions." *Ariz. All. for Retired Ams. v. Mayes*, 186 F.4th 622, 630 (9th Cir. 2026) (en banc). "Th[e] standing inquiry is the same for individuals and for organizations.'" *Id.* (quoting *FDA v. All. for Hippocratic Med.,* 602 U.S. 367, 393-94 (2024)).

SHU's fact-based standing allegations are sparse and insufficient, alleging only it is an unincorporated membership association that has "diver[ted] [ ] its resources to counteract Defendants' conduct." Doc. 1, ¶¶ 11, 72.

**1. No organizational standing because SHU alleges no injury-in-fact**

"[A]n association may have standing in its own right to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy." *Ariz. All.,* 186 F.4th at 630 (simplified). "But … an organization needs a direct stake in the outcome of a case. So what matters for standing is the nature of the injury, not the legal form of the injured." *Id.* (simplified). SHU's standing doesn't "turn[] on whether" its members have standing but whether SHU has "suffered or would likely suffer an injury-in-fact: a concrete, particularized, and actual or imminent injury to a legally protected interest." *Id.* at 631.

SHU's allegation that it "diver[ted] [ ] its resources to counteract Defendants' conduct," Doc. 1. ¶ 72, is conclusory and fails under *Twombly/Iqbal*. Even with factual enhancement it would be insufficient. After *Hippocratic Med*., 602 U.S. at 394, diversion of

resources is no longer sufficient for organizational standing. *See Ariz. All.*, 186 F.4th at 633-64 (discussing *Hippocratic Med.,* overruling prior case law). An organization can no longer "manufacture standing in the absence of an independently sufficient injury-in-fact, even where [resource] diversion is 'costly and burdensome'" and even if it has '"expend[ed] money to gather information and advocate against the defendant's action'" because "diversion of resources … it is not itself an injury-in-fact." *Ariz. All*., 186 F.4th at 633.

Plaintiffs allege no facts demonstrating the City's conduct '"directly affected and interfered with' [SHU's] core activities" of advocating for the unhoused apart from resource diversion. *Id.* at 634 (quoting *Hippocratic Med*., 602 U.S. at 395); *see e.g., Mussi v. Fontes*, 2026 U.S. App. LEXIS 7775, at *5 (9th Cir. Mar. 17, 2026) (unpub.) (organization "spend[ing] 'more time and resources …,' which 'would otherwise be spent on other projects and activities that would advance their goals'" does not establish an injury-in-fact).

**2. No associational standing because individual member participation is required**

An organization has associational standing only if "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State*, 432 U. S. 333, 343 (1977). This requirement mandates "complete identity between the interests of the [organization] and those of its member[s]" such that "the necessary proof could be presented 'in a group context.'" *Ass'n for Accessible Meds. v. Bonta*, 766 F. Supp. 3d 1020, 1027-28 (E.D. Cal. 2025). "It also considers whether the 'challenge raises a pure question of law that is not specific to individual members.'" *Id.* "An organization does not have associational standing when its claims 'require an "ad hoc factual inquiry" for each member represented by the association.'" *Id.*

Because SHU seeks damages for every SHU member allegedly impacted by the City's purported wrongful conduct, Doc. 1, p. 47, SHU lacks associational standing because "the damages claims are not common to [SHU's] entire membership, nor shared by all in equal degree." *Warth v. Seldin*, 422 U.S. 490, 515 (1975). "[W]hatever injury may have been suffered is peculiar to the individual member concerned, and both the fact and extent of injury would require individualized proof." *Id.* at 515-16.

Seeking equitable relief does overcome this defect because "[t]he relief sought is only half the story.' Even if Plaintiffs' individualized declaratory relief request did not prohibit associational standing, the individualized nature of Plaintiffs' … claims would bar standing." *Ass'n of Christian Sch. v. Stearns*, 678 F. Supp. 2d 980, 985-86 (C.D. Cal. 2008) (quoting *Rent Stabilization Ass'n v. Dinkins*, 5 F.3d 591, 596 (2d Cir. 1993)).

SHU is not, for example, challenging the constitutionality of the MSP but rather seeks a declaration finding the City's "*conduct violated*" the law in various ways. Doc. 1, p. 47, ¶ 2 (emphasis added). A conduct-based inquiry vis-a-vie each SHU member presents no "pure question of law that is not specific to individual members" because not all members were subjected to the same conduct or impacted in the same way and, as such, "the necessary proof" needed to establish the right to the declaration sought cannot be "presented 'in a group context.'" *Accessible Meds*., 766 F. Supp. 3d at 1027; *see id*. at 1028 ("[C]ourts have generally held that associations lack standing to bring as-applied constitutional challenges, regardless of the relief sought, because the as-applied claims would have required individualized factual inquiries for each member of the association.") (citing cases).

**B. The Court Should Dismiss the "Shotgun Pleading"**

"Shotgun" pleadings violate Rule 8. *Gibson v. City of Portland*, 165 F.4th 1265, 1271-72 (9th Cir. 2026). "A shotgun pleading is one where a party indiscriminately incorporates assertions from one count to another, for example, by incorporating all facts … from all previous counts into each successive count preventing the opposing party from reasonably being able to prepare a response or simply making the burden of doing so more difficult." *Id.* at 1288 (simplified). Plaintiffs' "shotgun pleading" asserts 17 claims, each incorporating all previous allegations thus making it impossible for the City to determine what facts actually support each claim. Doc. 1, ¶¶ 73, 80, 86, 94, 100, 107, 113, 119, 123, 126, 131, 136, 142, 146, 148, 150, 153.

**C. The Court Should Dismiss "Defendant" Brian Pedro**

"A plaintiff suing multiple defendants must allege the basis of his claim against each defendant to satisfy Rule 8(a)(2)." *Dison v. Cal. Dep't of Corr. & Rehab.,* 2026 U.S. Dist.

LEXIS 200216, at *5 (E.D. Cal. Sep. 3, 2026). Pedro is listed in the complaint's caption, Doc. 1, p. 1, but not identified as a "defendant", *id.*, ¶¶ 30-36, or referenced elsewhere, *id.*, ¶¶ 1-158, so the complaint fails to show Pedro "personally participated" in any alleged wrongful conduct. *Piggee v. Taylor*, 2026 U.S. Dist. LEXIS 194766, at *8 (E.D. Cal. Aug. 28, 2026).

**D. Federal Claims**

**1. Violence Against Women Act provides no private right of action (17th claim)**

In *United States v. Morrison,* the Supreme Court invalidated VAWA's private right of action. 529 U.S. 598, 601-02 (2000); *Beverly v. Cty. of Orange*, 2022 U.S. App. LEXIS 29549, at *2 (9th Cir. Oct. 24, 2022) (unpub.); *Parker v. Alexander*, 171 F.4th 146, 149 (2d Cir. 2026); *Charbonneau v. Alaska Family Court*, 2025 U.S. Dist. LEXIS 187339, at *6 (D. Alaska Sep. 24, 2025); *Adams v. Garcia*, 2024 U.S. Dist. LEXIS 110349, at *5 & n. 1(C.D. Cal. May 3, 2024).

**2. Plaintiff's 5th Amendment takings claim fails because no private property was taken for public use (2nd claim)**

Applicable to the City through the 14th Amendment, the 5th Amendment provides that "'private property [shall not] be taken for public use, without just compensation.'" *Sierra Med. Servs. Alliance v. Kent*, 883 F.3d 1216, 1223 (9th Cir. 2018). '"A Takings Clause claim requires proof that the plaintiff possess a property interest that is constitutionally protected.'" *Id.* Plaintiffs allege an "intangible property" interest in benefits under the MSP or HVP and also allege physical property was taken and destroyed. Doc. 1, ¶¶ 34-35, 82. Regarding the former, plaintiffs allege no facts establishing a "property interest" in those benefits sufficient for a Takings Clause claim. *See Samuels v. FEMA*, 2023 U.S. Dist. LEXIS 132659, at *14-15 (C.D. Cal. July 24, 2023). Regarding the actual property, no facts are alleged showing it was "lawfully" taken for "public use" and, indeed, plaintiffs allege it was not lawfully taken through their other claims. *See Sanchez v. City of Fresno*, 914 F. Supp. 2d 1079, 1106 (E.D. Cal. 2012); *Cooley v. City of L.A.*, 2019 U.S. Dist. LEXIS 73735, at *13-15 (C.D. Cal. May 1, 2019).

///

**3. Plaintiffs' ADA/RA claims fail because the City did nothing "because of" a disability (3rd claim)**

Title II provides "'no qualified individual with a disability shall, *by reason of such disability,* be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.'" *Mayfield v. City of Mesa*, 131 F.4th 1100, 1109 (9th Cir. 2025) (quoting 42 U.S.C. § 12132) (emphasis added). "Section 504 of the RA similarly provides that '[n]o otherwise qualified individual with a disability in the United States . . . shall, *solely by reason of her or his disability*, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.'" *Id.* (quoting 29 U.S.C. § 794(a)) (emphasis added). Claims under Title II and the RA are analyzed the same. *Id.* '"To prove that a public program or service violated Title II of the ADA [or the RA], [a plaintiff] must show that: (1) [she] is a qualified individual with a disability; (2) [she] was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination *was by reason of [her] disability*.'" *Id.* (simplified) (emphasis added).

It is unclear what benefit or service plaintiffs allege being denied. *See* Doc. 1, ¶ 89. Assuming it is housing assistance through either the MSP or HVP, plaintiffs don't allege being denied housing assistance (or any other benefit or service) or otherwise discriminated against *because of a disability*. These disabled plaintiffs take issue with how the MSP was improperly "wound down." *Id.* But it was "wound down" no differently for these plaintiffs than any other participant and didn't target these disabled plaintiffs "because of" their disabilities. And being denied the ability "to request or receive accommodations before losing shelter" through a wrongful administration of a benefit or service, *id.*, is quite different than being denied that benefit or service "because of" a disability.

///

///

**4. Plaintiffs' § 1983 municipal liability claim is insufficiently plead (1st, 5th, and 6th claims)**

There is no vicarious liability under § 1983; City liability exists only where an "action pursuant to official [City] policy … causes a constitutional tort." *Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 691 (1978). *Benavidez v. Cty. of San Diego*, 993 F.3d 1134, 1153 (9th Cir. 2021). Plaintiffs' municipal liability allegations are hard to decipher, Doc. 1, ¶¶ 66-70, and fail under *Twombly/Iqbal*. *See AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 637-38 (9th Cir. 2012).

A plaintiff must allege "(1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (simplified); *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (a policy is the "moving force" if it was the "cause in fact" and "proximate cause of the constitutional deprivation.").

The City can be liable under § 1983: (1) where a policy or custom inflicts a constitutional injury by an employee; (2) where failing to train employees amounts to deliberate indifference to constitutional rights; and (3) where a policy-making official commits the constitutional violation or ratifies a subordinate's unconstitutional conduct. *Rodriguez v. Cty. of L.A.,* 891 F.3d 776, 802-03 (9th Cir. 2018). "To successfully plead a *Monell* claim, the Ninth Circuit has held that there must be sufficiently detailed factual allegations to give fair notice and to enable the opposing party to defend itself effectively and which plausibly suggest an entitlement to relief. To meet this standard, a plaintiff may do so by specifying the content of the policies, customs, or practices the execution of which gave rise to [the plaintiff's] constitutional injury. *Ahmadzai v. Cty. of Sacramento*, 2026 U.S. Dist. LEXIS 211229, at *12 (E.D. Cal. Sep. 16, 2026) (simplified). Notably, "the 'moving force" requirement is separate and discrete from the requirements that Plaintiff allege … a policy and that the policy amounted to deliberate indifference to Plaintiff's constitutional rights." *Gonzalez v. Cty. of Merced*, 2017 U.S. Dist. LEXIS 40705, at *12 (E.D. Cal. Mar. 21, 2017). And a plaintiff must

plead prior unconstitutional conduct because *Monell* liability is dependent on establishing "deliberate indifference." *Benavidez*, 993 F.3d at 1154; *Davis v. City of Ellensburg*, 869 F.2d 1230, 1233 (9th Cir. 1989); *see Tabayoyon v. City of Vacaville*, 2021 U.S. Dist. LEXIS 5972, at *14 (E.D. Cal. Jan. 11, 2021) ("Without additional allegations of similar, prior incidents, plaintiff has not demonstrated he is entitled to relief under an unconstitutional custom or policy theory of liability from *Monell*.").

Plaintiffs' *Monell* allegations consist of four short paragraphs with 20 lines of text containing conclusory allegations and "buzz words." Doc. 1, ¶¶ 67-70. This falls well short of providing the City with sufficient notice of the *Monell* claims.

Plaintiffs allege no facts showing a City *employee* did anything much less committed a constitutional violation. *See Monell*, 436 U.S. at 692 (§ 1983 "imposes liability on a government that, under color of some official policy, 'causes' an *employee* to violate another's constitutional rights") (emphasis added); *Markson v. Cty. of L.A.*, 2026 U.S. Dist. LEXIS 109879, at *9 (C.D. Cal. Apr. 8, 2026) ("[A] plaintiff must first allege an underlying constitutional violation by a municipal *employee*.") (emphasis added); *Myers v. Cty. of Fresno*, 2023 U.S. Dist. LEXIS 165884, at *11 (E.D. Cal. Sep. 18, 2023) (same). Although plaintiffs allege "joint action" with the Motels in denying constitutional rights, *Monell* liability does not exist against the City for acts of an independent contractor even if they are "state actors." *Castillo v. Yuma Cty. Bd. of Supervisors*, 2026 U.S. Dist. LEXIS 94097, at *56 (D. Ariz. Apr. 29, 2026); *Neuroth v. Mendocino Cty.*, 2018 U.S. Dist. LEXIS 149492, at *44-45 (N.D. Cal. Aug. 31, 2018).

Plaintiffs seemingly pursue "formal policy" and "acts of a policy maker" theories of liability, both based on the decisions to "create, fund, extend and terminate" the MSP and the decision to contract with Step Up. Doc. 1, ¶¶ 67. Plaintiffs also seemingly pursue "custom and practice" and "ratification" theories. *Id.*, ¶¶ 69-70. The "official actor" theory of *Monell* liability fails because there are no allegations that any official policy maker personally participated in any of the alleged constitutional violations. *Rodriguez*, 891 F.3d at 802-03. And decisions surrounding a public benefit program and contracting decisions are not

"policies" for *Monell* purposes. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-84 (1986) (discussing what constitutes an "official policy"). Moreover, plaintiffs' deliberate indifference allegations pertain to knowledge of Step Up's financial irregularities, not any prior constitutional violations. Doc. 1, ¶ 68. Nor do plaintiffs allege any facts establishing the "moving force" element of a *Monell* claim. Regarding the ratification theory, plaintiffs fail to allege any facts establishing that either the "Mayor" or "City Manager" are City "policy makers." *See Tabayoyon v. City of Vacaville*, 2021 U.S. Dist. LEXIS 5972, at *16 (E.D. Cal. Jan. 11, 2021) ("Whether an official is a policymaker for *Monell* purposes is a question governed by state law. Authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority, and of course, whether an official had final policymaking authority is a question of state law.") (simplified). Nor do plaintiffs allege any City employee did anything that could have been ratified and further allege no facts detailing how the Mayor or City Manager "approved and maintained the conduct and its basis." Doc. 1, ¶ 70.

**E. State Law Claims**

The Government Claims Act ("GCA") is a '"comprehensive statutory scheme governing the liabilities and immunities of public entities and public employees for torts.'" *Quigley v. Garden Valley Fire Protection Dist.*, 7 Cal.5th 798, 803 (2019); §§ 810-998.3. Its intent is "not to expand the rights of plaintiffs in suits against governmental entities, but to confine potential governmental liability to rigidly delineated circumstances" *Williams v. Horvath*, 16 Cal. 3d 834, 838 (1976).

**1. All plaintiffs' state law claims are subject to dismissal because they have not complied with the GCA's claim presentation mandate**

The GCA "establishes a standardized procedure for bringing 'all claims for money or damages against local public entities.' (§ 905.)" *Tesoro Ref. & Mktg. Co. LLC v. City of Carson*, 20 Cal. 5th 531, 541 (2026) (footnote omitted); *McWilliams v. City of Long Beach*, 56 Cal. 4th 613, 618 (2013). Under the GCA, "a person may not bring a suit for money or damages against a government entity until he or she presents a claim in the manner required by

the GCA, and the claim either has been acted upon' by the government entity 'or has been deemed to have been rejected.'" *Tesoro*, 20 Cal. 5th at 546; *Rubenstein v. Doe No. 1*, 3 Cal. 5th 903, 907-08 (2017*); City of Stockton v. Superior Court*, 42 Cal. 4th 730, 737-38 (2007); *Shirk v. Vista Unified School Dist.,* 42 Cal. 4th 201, 209 (2007).

"The purpose of the claim presentation mandate is 'to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation.'" *City of Stockton*, 42 Cal. 4th at 738 (quoting *City of San Jose v. Superior Court*, 12 Cal. 3d 447, 455 (1974)); *McWilliams*, 56 Cal. 4th at 619; *DiCampli-Mintz v. Cty. of Santa Clara*, 55 Cal. 4th 983, 991 (2012). It "also 'enable[s] the public entity to engage in fiscal planning for potential liabilities and to avoid similar liabilities in the future.'" *DiCampli-Mintz*, 55 Cal. 4th at 991 (quoting *City of Stockton*, 42 Cal. 4th at 738).

Compliance with the claim presentation mandate is an element of a claim against a public entity that must be plead, *State v. Superior Court*, 32 Cal. 4th 1234, 1244-45 (2004); *Mangold v. California Pub. Utils. Comm'n*, 67 F.3d 1470, 1477 (9th Cir. 1995); *Pickering v. Enenmoh*, 722 F. App'x 695, 696 (9th Cir. 2018); *Davis v. Herrera*, 2026 U.S. Dist. LEXIS 222114, at *6 (E.D. Cal. Sep. 29, 2026), because "[p]resentation of a written claim, and action on or rejection of the claim, are conditions precedent to suit." *Williams v. City of Fresno*, 2026 U.S. Dist. LEXIS 188715, at *18-19 (E.D. Cal. Aug. 21, 2026) (citing *State*, 32 Cal. 4th at 1245).

Plaintiffs concede not yet presenting a claim to the City. Doc. 1, ¶ 71. Plaintiffs' violation of the GCA requires dismissing the state law claims. *Harland v. City of W. Hollywood*, 120 Cal. App. 5th 1166, 1171 (2026)[2]; *Le Mere v. Los Angeles Unified Sch. Dist.,* 35 Cal. App. 5th 237, 247 (2019); *Lowry v. Port San Luis Harbor Dist.*, 56 Cal. App. 5th 211, 215 (2020); *see Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 627 (9th Cir. 1988)

---

[2] The California Supreme Court granted review in *Harland* but ordered it citable "for its persuasive value." *Harland v. City of W. Hollywood*, No. S297247, 2026 Cal. LEXIS 5499, at *1 (Sep. 23, 2026).

("Karim-Panahi's pendent state law tort claims against both the individual and public entity defendants are barred unless he presented them to the City and the LAPD before commencing suit."); *Moore v. L.A. Unified Sch. Dist.*, 2025 U.S. Dist. LEXIS 259059, at *29 (C.D. Cal. Dec. 12, 2025) ("'Only after the public entity's board has acted upon or is deemed to have rejected the claim may the injured person bring a lawsuit alleging a cause of action in tort against the public entity.'"); *D.R. v. Contra Costa Cnty.*, 2024 U.S. Dist. LEXIS 71158, at *5-6 (N.D. Cal. Apr. 18, 2024) ("Consequently, where a plaintiff files a lawsuit against a public entity and/or its employees before satisfying the claim presentation requirement, the lawsuit is subject to dismissal."); *Bridges v. Cal. Dep't of Corr. & Rehab.*, 2023 U.S. Dist. LEXIS 183027, at *20 (E.D. Cal. Oct. 10, 2023) ("As for plaintiff's state wage-and-hour and tort claims, which are being dismissed due to plaintiff's failure to comply with the California Government Claims Act, the court notes that a plaintiff may not 'cure her failure to file a prelawsuit claim by filing a postlawsuit claim' in an effort to comply with the California Government Claims Act.").

Only plaintiffs' FEHA claim needs further addressing.

§ 905 specifically exempts certain claims from the GCA's claim presentation mandate. FEHA claims are not one of them. *Id.,* § 905 (a)-(o). Thus, § 905's plain language demonstrates that the California Legislature didn't intend to exclude FEHA claims from mandatory claim presentation. *See Sierra Club v. State Bd. of Forestry*, 7 Cal. 4th 1215, 1230 (1994) ("Under the maxim of statutory construction, expressio unius est exclusio alterius, if exemptions are specified in a statute, we may not imply additional exemptions unless there is a clear legislative intent to the contrary."). However, there is limited and dated intermediate California appellate authority holding compliance with the GCA is excused for FEHA employment discrimination claims under § 12940 because FEHA has its own mandatory pre-lawsuit complaint requirement serving the same purpose as the GCA's claim presentation mandate - enabling a public entity to investigate and potentially resolve claims before a lawsuit is filed. *Snipes v. City of Bakersfield*, 145 Cal. App. 3d 861, 865-870 & n. 7 (1983); *see* § 12960, § 12965(b).

The wrinkle here is plaintiffs maintain FEHA housing discrimination claims under § 12955. Doc. 1, ¶ 124. Unlike employment claims, housing discrimination claims don't have a mandatory prelawsuit complaint requirement. § 12989.1(b) ("An aggrieved person may commence a civil action whether or not a complaint has been filed under this part and without regard to the status of any complaint."). Thus, unlike FEHA employment claims, FEHA housing discrimination claims brought against public entities do not have "the FEHA procedures … [that] adequately serve the purposes of the [GCA]." *Snipes*, 145 Cal. App. 3d at 870 n.7; *see Gatto v. Cty. of Sonoma*, 98 Cal. App. 4th 744, 764 (2002) ("Exceptions to the [claim] filing requirement not specifically enumerated in the [GCA] have occasionally been allowed, but only where the claim is based on a statute or statutory scheme that includes a functionally equivalent claim process.") (citing cases).

The City is unaware of any authority on this issue, but factors favor requiring GCA compliance for FEHA housing discrimination claims. First, the California Legislature did not exempt them and there is no "clear [legislative] intent" allowing additional exemptions. *Sierra Club*, 7 Cal. 4th at 1230; *see Herrera v. Zumiez, Inc.*, 953 F.3d 1063, 1070 (9th Cir. 2020) (California's rules of statutory construction apply to interpreting California statutes). Even if one accepts the somewhat dubious proposition given rules of statutory construction that the "purposes and procedures of the FEHA demonstrate a legislative intent that actions against governmental entities brought under the FEHA are to be excepted from the general requirements of the [GCA]" of presenting a claim, *Snipes*, 145 Cal. App. 3d at 865, this same reasoning does apply to FEHA housing discrimination claims that do not mandate a prelawsuit complaint. Second, there is no mandated "duplicative process" serving the same purpose as the Act's claim presentation obligation. *Snipes*, 145 Cal. App. 3d at 870 n. 7. Third, and perhaps most importantly, the California Supreme Court would likely find FEHA housing discrimination claims not exempted from the GCA. *See Judd v. Weinstein*, 967 F.3d 952, 956 (9th Cir. 2020) ("The question presented by this appeal is one of first impression under California law. Therefore, we are tasked with predicting how the California Supreme Court would resolve it."). California's Supreme Court consistently stresses the GCA's *mandatory*

claim presentation requirement and the purposes it serves. Both are defeated if a plaintiff can pursue a FEHA housing discrimination claim without first presenting a GCA claim.

**2. Plaintiffs' § 815.6 claim fails because plaintiffs fail to allege an enactment imposing a mandatory duty (8th claim)**

§ 815.6 liability exists only "when (1) a mandatory duty is imposed by an enactment, (2) the duty was designed to protect against the kind of injury allegedly suffered, and (3) breach of the duty proximately caused injury." *State Dep't of State Hosps. v. Superior Court*, 61 Cal. 4th 339, 348 (2015). An "enactment" is "a constitutional provision, statute, charter provision, ordinance or regulation." § 810.6. "This definition is intended to refer to all measures of a formal legislative or quasi-legislative nature." *Wilson v. Cty. of San Diego*, 91 Cal. App. 4th 974, 982 (2001); *see* § 811.8 ("'Statute' means an act adopted by the Legislature of this State or by the Congress of the United States, or a statewide initiative act."); § 811.6 ("'Regulation' means a rule, regulation, order or standard, having the force of law, adopted by an employee or agency of the United States pursuant to the federal Administrative Procedure Act … or as a regulation by an agency of the state pursuant to the Administrative Procedure Act ….").

A mandatory duty exists under an "enactment" when it is "obligatory, rather than merely discretionary or permissive, in its directions to the public entity; it must require, rather than merely authorize or permit, that a particular action be taken or not taken." *State Hosps.*, 61 Cal. 4th at 348 (simplified). "It is not enough, moreover, that the public entity or officer have been under an obligation to perform a function if the function itself involves the exercise of discretion." *Id.* (simplified). "The mandatory nature of the duty must be phrased in explicit and forceful language. It is not enough that some statute contains mandatory language. In order to recover plaintiffs have to show that there is some specific statutory mandate that was violated by the public entity." *Id.* at 348-49 (simplified). Whether an enactment imposes a mandatory duty is a legal question of statutory construction for the court to resolve, *State Hosps.,* 61 Cal. 4th at 349, and "[c]ourts have construed this first prong rather strictly[.]," *Guzman v. County of Monterey*, 46 Cal. 4th 887, 898 (2009). To that end, "[a] 'litigant seeking

to plead a mandatory duty must specifically allege the applicable statute or regulation.'" *Manns v. Cty. of San Bernardino*, 2023 U.S. Dist. LEXIS 38290, at *11 (C.D. Cal. Mar. 6, 2023) (quoting *Becerra v. Cty. of Santa Cruz*, 68 Cal. App. 4th 1450, 1458 (1998); *Sullivan v. City of Sacramento*, 190 Cal. App. 3d 1070, 1080). '"Unless the applicable enactment is alleged in specific terms, a court cannot determine whether the enactment relied upon was intended to impose an obligatory duty to take official action to prevent foreseeable injuries or whether it was merely advisory in character.'" *Becerra*, 68 Cal. App. 4th at 1458 (quoting *Sullivan v. City of Sacramento*, 190 Cal. App. 3d 1070, 1080 (1987)); *In re Groundwater Cases*, 154 Cal. App. 4th 659, 689 (2007) ("A plaintiff seeking to hold a public entity liable under Government Code section 815.6 must specifically identify the statute or regulation alleged to create a mandatory duty.").

Plaintiffs allege mandatory duties under "mandatory shelter standards imposed by the enactments and funding conditions governing [the MSP], including but not limited to 24 C.F.R. Part 576, et seq [and the] McKinney-Vento Homeless Assistance Act (42 U.S.C. [§§] 11371-11378), and the City's own written which imposed mandatory duties concerning, among other things, written notice of termination of shelter, grievance procedures, habitability, and transition planning," Doc. 1, ¶ 121, but collectively citing to seven statutes (42 U.S.C. §§ 11371-11378) and 34 separate regulatory provisions (24 C.F. R. Part 576) violates not only the requirement to specifically identify the statute imposing the mandatory duty, *Becerra*, 68 Cal. App. 4th at 1458, but also Rule 8 because one must guess which statute or regulation plaintiffs think impose the mandatory duties they allege the City violated. *See Gatlin v. Contra Costa Cty.,* 2024 U.S. Dist. LEXIS 147136, at *45 (N.D. Cal. Aug. 16, 2024) (dismissing § 815.6 claim alleging a mandatory duty under a statute containing eleven subsections); *Cohen v. Cty. of Santa Cruz*, 2017 U.S. Dist. LEXIS 16547, at *11-18 (N.D. Cal. Feb. 3, 2017) (dismissing § 815.6 claim alleging a mandatory duty under "Chapter 16.20 of the County Code" that contained "thirty-two separate sections.").

Nonetheless, a review of 42 U.S.C. §§ 11371-11378 establishes none impose any mandatory duty on the City to do anything. And speculating about what provisions within 24

C.F.R. Part 576 plaintiffs believe imposes a mandatory duty on the City, perhaps plaintiffs rely on the "Program Requirements" found in 24 C.F.R. §§ 576.400-576.409. Although these provisions mandate programs receiving funds implement certain policies, they don't express in any mandatory way how those policies must be implemented. Moreover, plaintiffs allege these policies existed through "the City's own written policies." Doc. 1, ¶ 121. Thus, plaintiffs allege the City complied with the "Program Requirements" but failed to follow its own implementing policies. But whatever these unidentified policies might be, they are not "a constitutional provision, statute, charter provision, ordinance or regulation" and thus not "enactments." § 810.6; *see Lockhart v. Cty. of L.A.*, 155 Cal. App. 4th 289, 306 n.20 (2007) ("A [City's] own [policy] manual does not even constitute an 'enactment' for the purposes of Government Code section 815.6.") (citing *Wilson*, 91 Cal. App. 4th at 982); *Posey v. California*,180 Cal. App. 3d 836, 848-49 (1986) ("enactment" does not include "policy manuals"); *see also Mag US Lounge Mgmt. LLC v. Ontario Int'l Airport Auth.*, 2025 U.S. Dist. LEXIS 76482, at *31 (C.D. Cal. Apr. 22, 2025) (same); *Bearden v. Alameda Cty.*, 2020 U.S. Dist. LEXIS 56271, at *12 (N.D. Cal. Mar. 30, 2020) (same); *Bennett v. Gallacher*, 2018 Cal. App. Unpub. LEXIS 1916, at *17 (Mar. 20, 2018) (same).

**3. Plaintiffs' FEHA housing discrimination claim fails because the City is not an "owner" (9th claim)**

§ 12955 makes it unlawful for "the owner of any housing accommodation" to discriminate "because of" a disability. § 12955(a), (b), (f). "'Owner' includes the lessee, sublessee, assignee, managing agent, real estate broker or salesperson, or any person having any legal or equitable right of ownership or possession or the right to rent or lease housing accommodations …" § 12927(e).

Regarding the *private properties* at issue here, plaintiffs do and cannot not allege facts establishing the City is an "owner" because they do not and cannot allege the City was a "lessee, sublessee, assignee, managing agent, real estate broker or salesperson." *Id.* No allegations establish a "legal or equitable right of ownership or possession" by the City in the private property. *Id.* Trying to tie the City into this claim as an "owner" through the conclusory

and insufficient allegation that the City is the "program administrator" with "the right to rent and control" the "units" at the properties is insufficient. Doc. 1, ¶ 124. Though plaintiffs allege the MSP and HVP are City programs administered by Step Up and either the City or Step Up determines who qualifies for the program and associated housing assistance, there are no allegations establishing the City does anything more than "compensate" property owners participating in the program for room charges. *Id.*, ¶ 33. Payment for charges is far different than having the "right to rent and control" the private property.

**4. No right of action exists under Article 1, section 1 of the California Constitution (14th claim)**

Plaintiffs' claim is based on the provision in Article I, section 1, of the California Constitution provides that provides "[a]ll people are by nature free and independent and have inalienable rights," which includes "pursuing and obtaining safety," Doc. 1, ¶ 147, but this provision confers no actionable right of action.

"To create a private right of action, a constitutional provision must 'suppl[y] a sufficient rule by means of which the right given may be enjoyed and protected, or the duty imposed may be enforced.'" *Bates v. Arata*, 2008 U.S. Dist. LEXIS 23910, at *13-14 (N.D. Cal. Mar. 26, 2008) (quoting *Clausing v. San Francisco Unified School Dist.,* 221 Cal. App. 3d 1224, 1237 (1990)). "A constitutional provision does not create a private right of action 'when it merely indicates principles, without laying down rules by means of which those principles may be given the force of law.'" *Id.* '"[A]lthough safety and happiness are inalienable rights, [Article I, Section 1] of the [California] Constitution does not establish the means whereby they may be enjoined.'" *Allen v. Cty. of Sonoma*, 2017 U.S. Dist. LEXIS 133548, at *11 n.2 (N.D. Cal. Aug. 18, 2017) (quoting *Katzberg v. Regents of the University of California*, 29 Cal.4th 300, fn. 15 (2002)). Indeed, '"[n]o case ever has held that this provision enunciating the inalienable right to obtain safety and happiness is self-executing in the sense that it gives rise, in and of itself, to a private right of action for damages." *Id.* (quoting *Katzberg*, 29 Cal.4th 300, fn. 15); *Clausing*, 221 Cal. App. 3d at 1237 n.6 (safety and happiness provision is neither "self-executing in the sense that it gives rise, in and of itself, to a

private right of action for damages" nor does it create "an affirmative duty on the part of the state to take particular steps to guarantee the enjoyment of safety or happiness by all citizens") (citing cases); *accord Stewart v. Smith*, 2017 U.S. Dist. LEXIS 398, at *5-6 (N.D. Cal. Jan. 3, 2017); *see Crossley v. California*, 479 F. Supp. 3d 901, 918 (S.D. Cal. 2020) ("Both state and federal courts have found that this clause identifies mere principles and does not create a private right of action.") (citing cases); *Machado v. Boyd*, 2025 U.S. Dist. LEXIS 89347, at *25-26 (N.D. Cal. May 9, 2025) ("[C]ourts in this district have found that the right to happiness 'merely indicates a principle,' rather than conferring a private right of action for damages.") (citing cases); *Allen v. Cty. of Sonoma*, 2017 U.S. Dist. LEXIS 133548, at *11 n.2 (N.D. Cal. Aug. 18, 2017) ("Several federal courts have dismissed claims for deprivations of safety and happiness on this ground.") (citing cases); *see also Ahmadzai v. Cty. of Sacramento*, 2026 U.S. Dist. LEXIS 72935, at *13 (E.D. Cal. Apr. 2, 2026) ("California courts have noted that these provisions 'do not provide 'rules by means of which' the principals at issue could be given force of law.' Additionally, courts have found these provisions to be 'devoid of guidelines, mechanisms, or procedures from which a damages remedy could be inferred.' Accordingly, courts have dismissed these state constitutional claims where a statute or common law is the more appropriate vehicle for the action.") (citations omitted).

**5. Plaintiffs allege no statutorily conferred benefit of which they were denied in violation of Article 1, section 7 of the California Constitution (15th claim)**

Article 1, Section 7 of the California Constitution provides that "[a] person may not be deprived of life, liberty, or property without due process of law" and this constitutional provision is "[f]ocused [ ] on an individual's due process liberty interest to be free from arbitrary adjudicative procedures." *Ryan v. Cal. Interscholastic Fed'n-San Diego Section,* 94 Cal. App. 4th 1048, 1069 (2001). To "limit[] the universe of potential due process claims," the plaintiff must "identify a statutorily conferred benefit or interest to trigger procedural due process under the California Constitution." *Id.* at 1071; *Las Lomas Land Co., LLC v. City of L.A.,* 177 Cal. App. 4th 837, 855 (2009); *see Doe v. Grewal*, 2024 U.S. Dist. LEXIS 211606, at *13 (N.D. Cal. Nov. 20, 2024) ("[T]he plaintiff must 'identify a statutorily conferred benefit

or interest of which he or she has been deprived to trigger procedural due process under the California Constitution.'") (quoting *Chorn v. Workers' Comp. Appeals Bd.,* 245 Cal. App. 4th 1370, 1387 (2016)); *Chang v. Beauchamp*, 2021 U.S. Dist. LEXIS 33893, at *8 (N.D. Cal. Jan. 19, 2021) ("Plaintiff's claims for violations of the due process clause in California's constitution similarly fail. Plaintiff has failed to sufficiently allege a statutory benefit of which she was allegedly deprived, which is necessary for a viable due process claim under state law.") (citing *Ryan*, 94 Cal. App. 4th at 1071); *aff'd*, 2022 U.S. App. LEXIS 5127, at *2 (9th Cir. Feb. 25, 2022) ("claim for due process under the California Constitution requires that plaintiff 'identify a statutorily conferred benefit or interest'") (quoting *Ryan*, 94 Cal. App. 4th at 1071).

Plaintiffs' conclusory allegation that the City failed to "abide by the state and federal requirements" to provide notice and a hearing before being removed from the Motels without specifically identifying those "state and federal requirements" renders the claim insufficiently plead. *See Doe*, 2024 U.S. Dist. LEXIS 211606, at *13 (dismissing claim); *Chang,* 2021 U.S. Dist. LEXIS 33893, at *8 (dismissing claim), *aff'd.* 2022 U.S. App. LEXIS 5127, at *2.

**6. Plaintiffs' breach of contract claim fails because they do not sufficiently allege third party beneficiary status (16th claim)**

California Civil Code § 1559 provides: "A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it." Excluded from this section is "enforcement of a contract by persons who are only incidentally or remotely benefited by it." *Martinez v. Socoma Cos*., 11 Cal. 3d 394, 400 (1974). A third party trying sue a contracting party for breach "must demonstrate that the express language of the contract and relevant circumstances under which contract was agreed to indicate (1) the plaintiff would in fact benefit from the contract; (2) a motivating purpose of the contracting parties was to provide a benefit the plaintiff; and (3) permitting the plaintiff to bring its own breach of contract action against a contracting party is consistent with the objectives of the contract and the reasonable expectations of the contracting parties." *Habtemariam v. Vida Capital Grp., LLC*, 2021 U.S. Dist. LEXIS 93194, at *25 (E.D. Cal. May 14, 2021) (citing

*Goonewardene v. ADP, LLC* 6 Cal. 5th 817, 821 (2019)); *S&J Logistics, Inc. v. United Nat'l Ins. Co*., 2024 U.S. Dist. LEXIS 76547, at *18 (E.D. Cal. Apr. 26, 2024). A contract merely benefiting a third party "does not render that party a 'third party beneficiary.'" *S&J Logistics, Inc. v. United Nat'l Ins. Co.*, 2024 U.S. Dist. LEXIS 76547, at *18 (quoting *Ford Motor Warranty Cases,* 89 Cal. App. 5th 1324, 1336 (2023)). '"Nor does the knowledge that the third party may benefit from the contract suffice.'" *Id.* '"Rather, the parties to the contract must have intended the third party to benefit.'" *Id.*

Absent clear manifestation in the contract to the contrary, the presumption is public entity contracts do not have third party beneficiaries as those contracts are generally intended to benefit a large class of citizens. *See Martinez*, 11 Cal.3d at 401-02; *Dateline Builders v. City of Santa Rosa*, 146 Cal.App.3d 520, 526-28 (1983); *see also Lawendowski v. City of Long Beach*, 2017 Cal. App. Unpub. LEXIS 1303, at *14-15 (Feb. 21, 2017) ("We find no case, however, to allow a party to claim standing as a third party beneficiary to enforce a claim against a public entity, based on a contract entered by that public entity with another entity, public or private.") (citing *Lake Almanor Associates L.P. v. Huffman-Broadway Group, Inc.*, 178 Cal. App. 4th 1194, 1200-03 (2009)). Indeed, no intent is "inferred simply from the fact that the third persons were intended to enjoy the benefits" of a public entity's contract with another entity. *Martinez*, 11 Cal.3d at 401. There must be a manifested intent to compensate plaintiffs or other members of the public for contractual nonperformance. *Id.* at 402; *Mayfield v. Cty. of Merced*, 2014 U.S. Dist. LEXIS 158648, at *29-30 (E.D. Cal. Nov. 10, 2014).

Plaintiffs do not attach or incorporate any contract into the complaint and allege no contract terms. Nothing is alleged showing a manifested intention to compensate plaintiffs for a breach of contract, much less any breach of contract. *See* Doc. 1, ¶¶ 30-39, 151-152.

Dated: November 3, 2026

Dean Gazzo Roistacher LLP

By: */s/ Lee H. Roistacher*
Lee H. Roistacher
Nicolette A. Yohn
Attorneys for Defendants
City of Sacramento and Brian Pedro